**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MAKARAND BIDWAI,<br><br>Plaintiff,<br><br>v.<br><br>HON. J. RANDALL CORMAN et al.,<br><br>Defendants. | Civil Action No. 25-13614 (RK) (TJB)<br><br>**MEMORANDUM OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon *pro se* Plaintiff Makarand Bidwai's ("Plaintiff") application to proceed *in forma pauperis*, ("IFP," ECF No. 1-3), together with Plaintiff's Complaint against the Honorable J. Randall Corman, J.S.C.; the Honorable Michael A. Toto, A.J.S.C.; the Honorable Lisa Vignuolo, P.J.Ch.; Michael Blee; and John Walling (collectively, "Defendants"). ("Compl.," ECF No. 1.) For the reasons set forth below, Plaintiff's application to proceed IFP is **GRANTED**, and the Complaint is **DISMISSED** without prejudice.

## I. BACKGROUND[1]

Plaintiff alleges that he is the victim of a retaliatory scheme in the Superior Court of New Jersey, Middlesex County that culminated in two "evictions executed without due process and in violation of state and federal constitutional rights." (Compl. at 2.)[2] Plaintiff sues three state court

---

[1] The following facts are derived from Plaintiff's Complaint and accepted as true only for purposes of screening the Complaint pursuant to 28 U.S.C. § 1915(e)(2). *See, e.g., Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).

[2] Plaintiff's Complaint contains paragraph numbers, but they are non-consecutive and inconsistent. For example, Paragraphs 15 and 16 occur twice, and Plaintiff proceeds directly from Paragraph 18 to 29. (*See* Compl. at 3–4.) Accordingly, the Court cites to the Complaint by page number.

Judges (Judges Randall Corman, Michael Toto, and Lisa Vignuolo), the Acting Administrative Director of the New Jersey Courts (Michael Blee), and a "Court Officer" (John Walling) all in their official capacities.[3] (*Id.*)

Specifically, Plaintiff alleges that in November 2024, Judge Corman "assumed control over [Plaintiff's] landlord-tenant docket . . . despite lacking in personam jurisdiction." (*Id.*) Thereafter, he alleges that Judge Corman "engaged in multiple procedural frauds." (*Id.*) Plaintiff claims that Judge Corman "again manipulated docket assignments to preside over" another case involving Plaintiff in April 2025 despite an "ongoing" state court suit in which Plaintiff had sued the judge. (*Id.* at 3.) After this "manipulation," Plaintiff alleges that Judge Corman issued retaliatory eviction orders and dismissed Plaintiff's New Jersey Law Against Discrimination claim. (*Id.*) Plaintiff asserts that Walling, a court officer, "falsif[ied] service of process," which allegedly contributed to "the judicial fraud that deprived Plaintiff of his home." (*Id.*) As for Judge Toto's involvement, Plaintiff asserts that he "failed to enforce docket integrity and allowed Judge Corman to operate unchecked, even as evidence of misconduct accumulated." (*Id.*) Plaintiff claims that Judge Vignuolo was misassigned a case of his. (*Id.*) After this occurred, Judge Vignuolo "acted as a shield for Corman's misconduct" and "[h]er chambers published Plaintiff's sensitive financial documents online for over a week." (*Id.* at 4.) Finally, Plaintiff alleges that Blee, Acting Administrative Director of the New Jersey Courts, and Judges Toto and Vignuolo directed him to file "futile" or "meritless" appeals. (*Id.* at 3–4.)

Plaintiff brings four claims, all of which are against all Defendants. In Count I, he brings a claim under 42 U.S.C. § 1983, alleging violations of his due process and equal protection rights.

[3] Plaintiff additionally sues "John and Jane Does 1–10," "fictitious individuals whose identities are unknown but who acted under color of law in relation to the events described." (Compl. at 2.)

(*Id.* at 5–6.) In Count II, he brings a Takings Clause claim under the Fifth and Fourteenth Amendments. (*Id.* at 6–7.) The Court construes Count II as a second § 1983 claim. *See DeVillier v. Texas*, 601 U.S. 285, 292 (2024) (declining to resolve the question of "whether a plaintiff has a cause of action arising directly under the Takings Clause"); *see Kelly v. Bell*, No. 22-1940, 2024 WL 5111955, at *6–7 (M.D. Pa. Dec. 13, 2024) (construing a Takings Clause claim as brought under § 1983 in light of *DeVillier*). In Count III, Plaintiff brings a claim under 42 U.S.C. § 1985(3) for conspiracy to violate his civil rights. (Compl. at 7.) Finally, in Count IV, Plaintiff seeks attorney's fees and costs under 42 U.S.C. § 1988(b). (*Id.* at 7–8.)

As relief for these claims, Plaintiff seeks (1) a declaratory judgment, (2) damages, and (3) injunctive relief "barring Judge J. Randall Corman from presiding over any current or future matters involving Plaintiff or his household," prohibiting Defendants' "retaliation or coordination with parties adverse to Plaintiff in landlord-tenant or civil rights matters," and mandating certain "[i]nstitutional reforms or directives" compelling the New Jersey judiciary and Administrative Office of the Courts "to establish transparent procedures to prevent judicial interference with constitutionally protected litigation." (*Id.* at 8.)

## II. <u>LEGAL STANDARD</u>

Pursuant to 28 U.S.C. § 1915(a), a district court may authorize a plaintiff to proceed *in forma pauperis* and order a complaint to be filed without requiring the prepayment of filing fees. Section 1915 "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Deutsch v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995) (emphasis omitted) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). However, to guard against potential "abuse" of "cost-free access to the federal courts," *id*. (citing *Denton v. Hernandez*, 504 U.S. 25, 31 (1992)), § 1915(e) empowers district courts to dismiss an IFP complaint that "is frivolous or malicious" or "fails to state a claim on which relief may be granted," 28 U.S.C. § 1915(e).

A district court engages in "a two-step analysis" when considering a complaint filed with an IFP application: (1) under § 1915(a), the court determines whether the plaintiff is eligible to proceed without prepaying the civil filing fee, and (2) under § 1915(e), the court determines "whether the Complaint should be dismissed as frivolous or for failure to state a claim upon which relief may be granted." *Archie v. Mercer Cnty. Courthouse*, No. 23-3553, 2023 WL 5207833, at *1–2 (D.N.J. Aug. 14, 2023) (citing *Roman v. Jeffes*, 904 F.2d 192, 194 n.1 (3d Cir. 1990)). Courts may address these two questions "in either order or even simultaneously." *Karupaiyan v. Wipro Ltd.*, No. 23-2424, 2025 WL 89076, at *3 n.9 (3d Cir. Jan. 14, 2025) (quoting *Brown v. Sage*, 941 F.3d 655, 660 (3d Cir. 2019) (en banc)).

## III. DISCUSSION

### A. *In Forma Pauperis* Application

Section 1915(a) requires a plaintiff to submit "an affidavit stating all income and assets, the plaintiff's inability to pay the filing fee, the 'nature of the action,' and the 'belief that the [plaintiff] is entitled to redress.'" *Martinez v. Harrison*, No. 23-3513, 2023 WL 5237130, at *1 (D.N.J. Aug. 15, 2023) (alteration in original) (quoting 28 U.S.C. § 1915(a)). In the IFP application, the plaintiff "must state the facts concerning his or her poverty with some degree of particularity, definiteness or certainty." *Gross v. Cormack*, No. 13-4152, 2013 WL 5435463, at *2 (D.N.J. Sept. 27, 2013) (quoting *Simon v. Mercer Cnty. Cmty. Coll.*, No. 10-5505, 2011 WL 551196, at *1 (D.N.J. Feb 9, 2011)), *aff'd on other grounds*, 586 F. App'x 899 (3d Cir. 2014).

Plaintiff details in his IFP application that he and his spouse make a combined total of $2,318 per month from retirement payments and self-employment. (IFP at 1–2.) Additionally, they have $600 in a checking account. (*Id.* at 2.) Plaintiff states that he and his spouse's monthly expenses total $3,455, mostly consisting of $2,200 for rent or mortgage and $600 for food and $600 for "[r]egular expenses for operation of business, profession, or farm." (*Id.* at 4–5.) Plaintiff

did not provide a "detailed statement" supporting the latter category of expenses as required by the form IFP application. (*Id.*) However, even disregarding that unexplained amount, Plaintiff's monthly expenses still exceed his monthly income by about $500. Accordingly, the Court is satisfied that plaintiff is unable to pay the filing fee and his IFP application is **GRANTED**. *See Huertas v. Marvel & Maloney*, 255 F. App'x 613, 614 (3d Cir. 2007) (per curiam) (granting IFP where monthly expenses were "approximately equal" to monthly income).

### B. Screening of the Complaint

The Court must now assess whether Plaintiff's Complaint is frivolous or has otherwise failed to state a claim under § 1915(e). For the following reasons, the Court will dismiss the Complaint in its entirety without prejudice.

#### 1. Sovereign Immunity

Plaintiff's claims must first be dismissed because of Eleventh Amendment sovereign immunity. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against any one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This amendment "has been interpreted to render states—and, by extension, state agencies and departments and officials when the state is the real party in interest—generally immune from suit by private parties in federal court." *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002). "[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996).

Judges Corman, Toto, and Vignuolo—who are all sued in their official capacities as state court judges in Middlesex County, New Jersey—enjoy the protections of sovereign immunity under the Eleventh Amendment. *See Mosher v. New Jersey*, No. 06-2526, 2007 WL 1101230, at

*2 (D.N.J. Apr. 10, 2007) (finding Superior Court judges, sued for actions taken in their official capacity, are within the state's sovereign immunity under the Eleventh Amendment); *see also Owens v. Armstrong*, 171 F. Supp. 3d 316, 329–30 (D.N.J. 2016) (explaining that "the New Jersey Superior Court is an arm of the state entitled to share in the state's sovereign immunity" and finding the plaintiff's damages claims against Superior Court judges subject to sovereign immunity (internal quotation marks omitted)). Sovereign immunity also extends to Blee, named in his official capacity as the Administrative Director of New Jersey Courts, and Walling, named in his official capacity as "Court Officer" in Middlesex County. (Compl. at 1); *see Robinson v. N.J. Mercer Cnty. Vicinage-Fam. Div.*, 514 F. App'x 146, 149 (3d Cir. 2013) (per curiam) (explaining that county courts are "clearly a part of the State of New Jersey" and thus concluding that "both the court itself and its employees in their official capacities were unconsenting state entities entitled to immunity under the Eleventh Amendment"); *Dongon v. Banar*, 363 F. App'x 153, 156 (3d Cir. 2010) (per curiam) ("[S]tate courts, its employees, and the judges are entitled to immunity under the Eleventh Amendment because they are part of the judicial branch of the state of New Jersey, and therefore considered 'arms' of the state.").

There are three exceptions to Eleventh Amendment immunity: "1) congressional abrogation, 2) state waiver, and 3) suits against individual state officers for prospective relief to end an ongoing violation of federal law." *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001). None of these exceptions apply here. Congress did not intend to abrogate Eleventh Amendment immunity when it enacted §§ 1983, 1985, and 1988, the statutes under which Plaintiff sues. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 67 (1989) ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent."); *Seeney v. Kavitski*, 866 F. Supp. 206, 209 (E.D. Pa. 1994) ("Congress did

not intend to abrogate Eleventh Amendment immunity when it enacted § 1985."), *aff'd mem. sub nom.*, *Seeney v. Cmty. Action Agency of Del. Cnty., Inc.*, 107 F.3d 8 (3d Cir. 1997); *see also Vizcarrondo v. Bd. of Trs. of Univ. of P.R.*, 139 F. Supp. 2d 198, 206 (D.P.R. 2001) ("[S]ections 1981 and 1988[] do not contain congressional abrogations to a State's Eleventh Amendment immunity."). There is also no indication that New Jersey has consented to Plaintiff's suit. The third exception to sovereign immunity reserved for claims for prospective relief against state officials is also inapplicable because, for the reasons discussed *infra*, Plaintiff lacks standing to pursue such claims.[4] Therefore, the Eleventh Amendment bars the Complaint as to all Defendants.

2. Standing

Plaintiff has failed to demonstrate standing to pursue claims for prospective injunctive relief. A plaintiff must "demonstrate standing separately for each form of relief sought." *A.S. v. Harrison Twp. Bd. of Educ.*, 66 F. Supp. 3d 539, 545 (D.N.J. 2014) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 185 (2000)). "Standing is a jurisdictional matter." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Id*. To satisfy standing, a plaintiff must establish three elements: (1) the plaintiff must have suffered an "injury in fact—an invasion of a legally protected interest which is (a) concrete and

[4] Plaintiff also seeks a declaration that Defendant's past conduct violated his rights. This request for declaratory relief is barred by the Eleventh Amendment because it is retrospective. *See Francisco v. Kline*, No. 25-5775, 2026 WL 1880182, at *9 (E.D. Pa. June 30, 2026) ("The Eleventh Amendment bars official capacity suits against public officials seeking retrospective injunctive and declaratory relief . . . ." (internal quotation marks omitted)); *Wright v. New Jersey/Dep't of Educ.*, 115 F. Supp. 3d 490, 498 (D.N.J. 2015) ("Although claims seeking prospective injunctive relief are permitted, claims that act as a remedy for past violations are barred under the Eleventh Amendment. . . . To determine whether the relief sought is prospective or merely to remedy past wrongs, the court must look to the substance of the relief requested rather than the form." (first citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996); second citing *Blanciak v. Allegheny Ludlum Corp.,* 77 F.3d 690, 698 (3d Cir. 1996))).

particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560−61 (1992) (cleaned up).

To demonstrate standing for prospective relief, "the plaintiff must establish a real and immediate threat that he would again be the victim of the allegedly unconstitutional practice." *Chavis v. United States*, 597 F. App'x 38, 42 (3d Cir. 2014) (per curiam); *see A.S.*, 66 F. Supp. 3d at 546 ("[A] plaintiff must show that he or she is likely to suffer future injury from the defendant's illegal conduct."). "Allegations of possible future injury are not sufficient to satisfy Article III" standing. *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (internal quotation marks omitted). The threat of future injury may not be "merely imaginary or wholly speculative." *N.J. Bankers Ass'n v. Att'y Gen. N.J.*, 49 F.4th 849, 855 (3d Cir. 2022) (internal quotation marks omitted); *see City of Los Angeles v. Lyons*, 461 U.S. 95, 95 (1983) (explaining that "the injury or threat of injury" cannot be "conjectural" or "hypothetical"). Furthermore, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lyons*, 461 U.S. at 95–96 (omission in original); *Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir. 1987) ("While a § 1983 plaintiff's allegation that he has suffered from unconstitutional practices may be sufficient to establish standing to sue for damages, '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief.'" (alteration in original)); *see also Lyons*, 461 U.S. at 111 ("Absent a sufficient likelihood that he will again be wronged in a similar way,

Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional.");

The Complaint is devoid of facts to support the injury-in-fact requirement of Article III standing as to Plaintiff's claims for prospective injunctive relief. Plaintiff seeks an injunction "barring [Judge] Corman from presiding over any current or future matters involving Plaintiff or his household," prohibiting Defendants "retaliation or coordination with parties adverse to Plaintiff in landlord-tenant or civil rights matters," and mandating certain "[i]nstitutional reforms or directives" compelling the New Jersey Judiciary and Administrative Office of the Courts to "establish transparent procedures to prevent judicial interference with constitutionally protected litigation." (*Id.*) Plaintiff lacks standing to pursue these prospective claims. He pleads no facts to demonstrate a real and immediate threat that he would again fall victim to the unlawful practices alleged in the Complaint. (*See id*. at 2–8.) Even though Plaintiff claims that he was previously evicted more than once, he pleads only past harm, which is insufficient to establish injury-in-fact. *See McLennon v. City of New York*, 171 F. Supp. 3d 69, 106 (E.D.N.Y. 2016) ("[A]lthough the Amended Complaint establishes past harm to [the plaintiffs] and some minimal likelihood of future harm given the repeated instances of unlawful Step-Out Enforcement Checkpoints, those allegations do not rise to the level required to establish standing for injunctive relief."). Thus, the Court dismisses without prejudice all claims for prospective injunctive relief.[5]

---

[5] Plaintiff's Takings Clause claim independently fails because Plaintiff has provided no allegation that his property was taken "*for public use*." U.S. Const. amend. V (emphasis added); *see Thomas v. Independence Township*, 463 F.3d 285, 290 n.1 (3d Cir. 2006) ("[T]here cannot be a taking under the Fourteenth Amendment unless it is shown that property was taken for public purposes."); *Frein v. Pa. State Police*, 47 F.4th 247, 251 (3d Cir. 2022) (noting that property must be taken for "public use" to "check[] all the Fifth Amendment boxes" ); *Banks v. Rozum*, No. 14-27, 2015 WL 1186224, at *6 (W.D. Pa. Mar. 13, 2015) ("To the extent [the plaintiff] alleges an unlawful takings claim under the Fifth Amendment, no such violation

**CONCLUSION**

For the reasons set forth above, Plaintiff's application to proceed *in forma pauperis* is **GRANTED**, (ECF No. 1-3), and the Complaint (ECF No. 1) is **DISMISSED** without prejudice.

An appropriate Order accompanies this Memorandum Opinion.

ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: 9/2, 2026

occurred because the Takings Clause is violated only when private property is taken for a public use, i.e., appropriated to a public benefit, not for private or individual use."), *aff'd*, 639 F. App'x 778 (3d Cir. 2016).